Good afternoon. Welcome to the Fifth Circuit. I think we've got three arguments on the calendar for today. So batting lead-off is 25-50144, United States v. James. Ms. Killiman, welcome back. May it please the court. Opposing counsel. Mr. James raises three issues. The sentencing error. The government also agrees that the correct mens rea for attempted murder is specific intent to kill. That callous and wanton disregard for human life is insufficient. That element is important to the two arguments Mr. James makes against his conviction. Instructional error and sufficiency. I'd like to start with the instructional error. And of course that means the first question is, does the court get to review the error because of the invited error doctrine? And it does for two different reasons. The sort of bigger ask that I describe in the reply brief is for this court to craft an exception to the invited error doctrine, at least for jury instructions in criminal cases, that it shouldn't apply absent waiver, the intentional relinquishment of a known right. And that's described in the reply brief and I'm happy to answer questions about it. The second way to still get to the merits of this issue I think is the smaller ask, and that's to apply what this court has already recognized, an exception to the invited error doctrine for manifest injustice. And the court has applied the manifest injustice exception to invited error in the sentencing context in Taylor, which was cited in the government's brief. And that, in my view, is less egregious circumstances than here. The court, district court, in Taylor had intended and said in the record that he wanted about nine months of the sentence to be counted towards Mr. Taylor's sentence. But the defense attorney proffered the incorrect language for that judgment and the result was that the Bureau of Prisons wasn't crediting the nine months towards the sentence. And so this court held in Taylor that on limited remand, if the court clarifies that it really did want those nine months to count, then that would be manifest injustice and they sent it back to be corrected for that. And so that also was a court with an intention, like I'm sure in this case the district court intended to correctly instruct the jury. The language that the defense offered was incorrect, but the parties in the court adopted it. And this serious jeopardization of Mr. James Wright to be found by the jury guilty only beyond a reasonable doubt as to element was seriously jeopardized by that mistaken instruction. But how so? I mean the evidence here amply supports the required intent as opposed to any, you know, question about the lesser intent level. I mean a jury easily could find that he intended to kill the victim. A jury could also easily find that he acted with callous and reckless disregard for human life. Well actually maybe my question was imprecise. The jury easily could find that the higher intent was there. In other words, there doesn't seem to be that much risk for the callous indifference to really be at play here. And so the question is, I guess, how do we determine what is a manifest injustice in this case given the evidence in the trial? So I don't agree that the jury definitely would have found specific intent to kill. If it had been instructed it had to agree on specific intent to kill. And part of my support for that is the district court statements at sentencing. But isn't the fact that we can sit here and debate this probably the rest of the afternoon, we won't. Isn't that indicative in itself that any injustice is not manifest? No, I think that's a reason perhaps we lose on sufficiency of evidence, our other argument. But the question for the instructional error is whether there's a reasonable probability that the jury wouldn't have convicted Mr. James if it had been properly instructed. And that... Well right, but we've got to get through the fact that the instructions were substantively identical to what the defendant himself requested. And we've got to find that there's a manifest injustice. I mean, I take manifest to mean apparent. And it's nowhere apparent to me on this record that what the jury did went off the rails. Or they were misinstructed. Well, they may have been misinstructed or it may have been ambiguous, but that they followed the misinstruction. So manifest injustice, you're correct, it has been defined to mean an error so patent as to seriously jeopardize someone's right. And I was focusing on the right that I believe was jeopardized by Mr. James. And I understand that it is a jury question to determine what the mens rea is. Other circuits have reversed on instructional error in similar, you know, stabbing, brutal attacks where they found sufficiency of evidence that, yes, this meets the specific intent to kill. But there was still a reasonable probability. And even given the grievous wounds in that case, I forget if it was Jones or Perez, then it would go back to the jury for a new trial. And then there's Kwong, which was the booby-trapped briefcase case where the court did say sufficient evidence of specific intent to kill. We're crediting the verdict. But the problem on instructional error is I don't think you can credit the verdict anymore because the jury wasn't properly guided in its deliberations. And when we have the circumstantial evidence of many wounds and, you know, the different locations, but he was an army medic and he left without her being dead. And she was alive and aware of what was happening at the end. Given these circumstances, I think a reasonable juror could have also said no specific intent to kill, but certainly acting with deliberate indifference to the human life that may be lost from the actions. So and part of the patentedness of the obviousness of the error does come from Braxton and how the, you know, so it's obvious in the straightforward application of the Supreme Court and Hernandez-Montes, this court's common law attempt to murder case that the right element was specific intent to kill. And I know that there are unpublished guidelines cases from this court that say, well, we haven't really held one way or the other. Those cases do not recognize Hernandez-Montes. They're also in a different context of the guideline language. And they make the same mistake that the defense attorney made here, because the court in those cases, Hernandez, Lopez and Jackson, just looks to the murder definition for mens rea without glossing on and applying the attempted aspect of the crime, which narrows that malice of forethought from the two options to just the intentional and deliberate killing of someone. And so that makes it obvious that a mistake was made. And it also seriously jeopardized his right. In the Jones case that you mentioned a little bit earlier, one of the reasons for the fractured opinion was that, I think it's Judge Goodwin said that there was no statement, the government didn't have any statement like I intend to kill you specifically. Isn't that a little, isn't that distinguishable from this case? I mean, he used some words that I probably, I don't want to use from the bench, but didn't he use words like either this or your life? So he made a threat. That's true. I think making a threat an ultimatum, you do this or I kill you, is different than I intend to kill you. And that's what the district court was saying. But how, how is it different when he, when he basically says you do what I want you to do or I'm going to kill you? Because it relies on the victim to believe the threat to succumb. It doesn't mean he actually had the intent to kill. So we don't take him at his word? You're suggesting that we just, we don't take him at his word? His word is not enough? I don't think that we have to credit the, that he would follow through with the threat. And I think the point of the threat was to have her acquiesce to the sexual assault. And so while that is certainly evidence that the jury can consider, whether the jury necessarily finds that it's specific intent to kill, I don't think can just turn from the threat that's made. Specific intent was never really contested at trial, was it? No, it wasn't contested. How can, how can, it just seems that any instructional error, how could that possibly affect his substantial rights if you didn't contest specific intent at trial? Well, because everyone was mistaken at trial. So there wasn't, under the incorrect impression of the law, I would say there was certainly callous and wanton disregard. So don't spend your time arguing about mens rea because it's going to meet that lower standard. Well, but you know, the instructions are not incorrect. In other words, the instructions define murder. They define the specific intent, malice aforethought. They lay all that out. They're not incorrect. There's nothing in the instruction that led the jury to rely on either of the, I think there was a case like this, that the jury was affirmatively instructed to rely on either of the mens rea requirements. That's clearly, that would be much more substantial error than what happened here. There's nothing incorrect like that, like an affirmatively incorrect instruction. And I just question whether this is an obvious, as obvious an error as what plain error would require in any event, where the instructions themselves were correct. The assumption here is that the jury nonetheless went off the rails by going with the lesser standard, the lesser specific intent, or the lesser intent standard, let me try to say that, versus relying on the one that the evidence supported. Two points. First, in case to bring up, and just that this court in Capistrano recognizes that there can be plain error in jury instructions when the instructions are contradictory, unclear, and no party discussed the correct law at the, in closing argument. So they say that in the context of invited error also? That was not invited error, that was plain error. And most of the invited, this court's invited error cases find that there was no error, or that there was no third prong. Turning to the instructions though, they were incorrect. They included the instruction for malice of forethought. And the indictment says, intent to kill with malice of forethought. And at ROA 564, that's the paper version, not the transcript, but they're the same. It delineates with malice of forethought, means to either kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life. And so the jury, while not in that one case, wasn't told you can find callous and wanton disregard and that's enough. The jury was told you can find either intentional killing or you can find callous and wanton disregard. And all the element instructions simply refer back to the definition of murder, which also incorporates that malice of forethought definition. And then the second element that the instructions have, just a substantial step towards the crime and strongly corroborates the defendant's criminal intent. That is a stark contrast from the pattern instructions in the 9th and 11th circuits, where it says to the jury, you need to find a specific intent to kill, and that that intent existed when the substantial step was taken. And so these instructions, the elements themselves are unclear, but coupled with that definition of malice of forethought, they are wrong. And that is what the other circuits have found as well, that even using that statutory language, intent to commit murder, while that is technically correct and in the statute, when it is coupled with the definitions imported from the murder, you know, just the substantive offense, that's what makes it incorrect to do that. So I just have a little time left. Perhaps what the court was getting to also was the government makes an argument about it being a logical impossibility to act intentionally with callous and wanton disregard. And so the jury would know you can't recklessly intend a criminal act. But first off, the jury needs to follow the instructions, and the instructions don't explain that. And second, in Chagra and in Amdur that is cited in the briefs, it talks about how someone can, the definition of malice of forethought is intent to kill or intent willfully to act in a callous and wanton disregard manner. Okay, we'll see you back on rebuttal in a few. Mr. Knoll, welcome. Thank you, Your Honor, and may it please the court. Andrew Knoll on behalf of the United States. Alan James no longer disputes that he was the assailant who brutally attacked Mary Mannis in her barracks at Fort Hood in June 2000. James repeatedly stabbed Mannis, threatened her life, and when she fought back, plunged the knife into her neck within millimeters of her carotid artery. Even after she stopped resisting, James continued stabbing her and then left her for dead. This court should reject the new claims challenging his attempted murder conviction that James never raised below. Let me start with the invited error question. I think there's four specific reasons why this court can't and shouldn't find a manifest injustice exception in this case. The first is that that manifest injustice was never discussed in James's opening brief. Pages 11, 12 of his brief acknowledge that the instruction given was one substantially the same as the one he requested, and yet he never addressed invited error in his opening brief. In addition, I think, Judge Willett, to your point, here the issue of specific intent, indeed the issue of kind of how the attack unfolded and the circumstances of the attack, were never at issue at trial. He raised an entirely identity-based defense, and so I think that distinguishes cases like Taylor, where the invited error issue is one that's hotly disputed in the district court, and therefore there may have been a different outcome. Here, there was just no discussion of the actual circumstances of the attack. Indeed, James played up those circumstances in claiming below that he, who had no prior relationship with Ms. Mannis, couldn't have been the one to commit the crime. The two other reasons I would say there's not a manifest injustice here, first, Judge Wilson, to your point, I think this bleeds a bit into plain error, but we don't think there's any error here at all, much less kind of a clear and obvious one. The instructions specifically require the, and it tracks this court's standard pattern jury instruction 1.34 for attempt, generally. They define the actual substantive offense, and then they go on to say, to find an attempt, the jury would have to find intent to commit the crime, and that includes both the actus reus and the consequence, the fully completed crime, and so that distinguishes, I think, multiple of the cases that James cites in his brief, particularly the Perez case in the Seventh Circuit and the Kwan case in the Second Circuit, where the instructions actually conflated specific intent and wanton disregard. If you look closely at the instructions there, they said a jury could find a functionally specific intent if it found the instruction was specific to intent to commit murder, and for that same reason, Judge Douglas, to your point, I think the Ninth Circuit decision in Jones is very distinguishable on two grounds here. First, that was a preserved error, and there was actually a dispute at trial in Jones about whether the defendant, in fact, specifically intended to kill, because the defendant said that he intended to teach his cellmate a lesson, and he testified himself disputing the circumstances of the offense, and so that issue of kind of what was his intent and what were the circumstances of the offense, those were all hotly disputed at trial, and so on preserved error there. The court found an error. We don't agree there was an error, but even if you thought there was, we think that specifically distinguishes this case. The circumstances of the assault there, which included only five stab wounds and didn't include, Judge Douglas, kind of a statement about the defendant's intent, which we have here, I think fully distinguished that case as one in which there was either an error or one that would require reversal. So we think there's an invited error here. This court's cases on invited error always turn on just the mere fact of whether the party, whether it be a defendant or a civil party, actually requested the instruction, and in Gray, for example, in 1980, this court said, to avoid invited error, the defendant has to say he no longer wants the instruction. That's the on-off switch for invited error. So we think this case can be resolved quite easily on invited error. Even if you apply plain error for the same reasons I just discussed, I think there is no actual error here to the extent the instruction required intent to commit murder, which requires an intent to achieve the death of Mary Maness, and because the circumstances here, the overwhelming evidence, including both the nature of the actual physical assault on Miss Maness, the locations of the wounds, the through-and-through wound on her wrist that pinned her wrist to the nightstand, the repeated stabs to her neck close to her carotid artery, the fact that he made a specific threat before those neck vital areas of her body, and then that he kept stabbing her once she stopped resisting. All of that, I think, put beyond dispute that this was a circumstance of specific intent to kill. For those same reasons, I would say this evidence was clearly sufficient for a rational jury to find that James specifically intended to kill, and unless the court has any further questions, I'm happy to rest on our briefs. We obviously agree that resentencing is required here given this court's case law about the ex post facto issue, but we'd otherwise ask that you affirm the conviction itself. Thank you, Mr. Newell. Thank you. So regarding our failure to talk about manifest injustice in our opening brief, we proceeded under the assumption and belief that it was plain error standard of review, so once the government brought that up, we responded in full in the reply brief. I couldn't find a case where this court has held either on plain error review or injustice that they couldn't consider our arguments where it was fully addressed in the reply brief. And of course, our threshold argument is that invited error shouldn't apply at all because this court should adopt the test that the Ninth Circuit has, and even in his argument, the government doesn't make a case that this was a tactical deliberate error that the defendant knowingly introduced. Is that required? Currently, it is not required in this court's law. It is required in the Ninth Circuit, and I believe also the second, third, and district DC circuits apply it. And so that lack of intention in a deliberate trial strategy is also a reason to find it manifest injustice, and the Sixth Circuit has applied that reasoning to apply manifest injustice in a case called Barrow that's in our brief that also had to do with an instructional error where they went on to consider the issue because of the rights at stake to determine whether it was obvious or not. And so with regard to the argument about there not being error, counsel was referring to, you know, intent to commit the crime, intent to commit murder. It doesn't say intent to kill, intent to cause the death, and murder is defined in the instructions as a killing that is committed with malice of forethought, and malice of forethought is defined to be accomplished two different ways. And so if we assume that the jury is actually being guided by the words that the court gave it for deliberation, it can convict on either ground of the mens rea, and that's what where the prejudice stems from here. And I think for the, if there are no further questions, then I would just close with saying that this is a manifest injustice, and the fourth prong and manifest injustice are also served by reversing in this case because reversal will instill confidence that defendants are not held responsible for, by mistakes that the parties and the court made that affected the outcome of the case. Okay, Ms. Kimmelman, thank you very much. Appreciate your back-to-back arguments this week. Counsel, thank you both for your briefing and your presentations today. The case is submitted, and as y'all are getting tidied up, I'll go ahead and call the